AO93 Search and Seizure Warrant

☒ FILED ___ LODGED
___ RECEIVED ___ COPY

DEC – 6 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY **NWA** DEPUTY

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
A black Apple iPhone 12 Pro Max cellular telephone, serial
number G0NP44N60D42; a black Apple iPhone cellular
telephone 12, serial number DNPDTKJT0DXW, and a
Cricket cellular telephone EC1002, serial number
358621720926394

Case No. 21-1530 MB



## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before   12\20\2021 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for ___ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 12\6\21 at 10:48am     _____
                                               *Judge's signature*

City and state: <u>Yuma, Arizona</u>             <u>Honorable James F. Metcalf, U.S. Magistrate Judge</u>
                                               *Printed name and title*

## **ATTACHMENT A**

*Property to be searched*

The property to be searched is a black Apple iPhone 12 Pro Max cellular telephone, serial number G0NP44N60D42; a black Apple iPhone cellular telephone 12, serial number DNPDTKJT0DXW, and a Cricket cellular telephone EC1002, serial number 358621720926394. Both Apple iPhone's are subscribed to VEGA at 1630 West County 17 1/2 Street, Somerton, Arizona. The Cricket cellphone is subscribed to Blas Espinoza at 600 West Northern Avenue, Pueblo, Colorado. The cellular telephones are currently located at the YRO office located at 7010 East 29th Street, Suite 104, Yuma, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.    Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES that relate to violations of 21 U.S.C. §§ 841, and 846, including:

      a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

      b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

      c.  all bank records, checks, credit card bills, account information, or other financial records;

      d.  all information regarding the receipt, transfer, possession, transportation, or use of drug or;

      e.  any information recording schedule or travel;

      f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      g.  contextual information necessary to understand the evidence described in this attachment.

2.    Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books,

2

contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

FILED ☒
RECEIVED ___ LODGED
___ COPY

DEC - 6 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

| In the Matter of the Search of | Case No. 21-1530MB |
|---|---|
| A black Apple iPhone 12 Pro Max cellular telephone, serial number G0NP44N60D42; a black Apple iPhone cellular telephone 12, serial number DNPDTKJT0DXW, and a Cricket cellular telephone EC1002, serial number 358621720926394. | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A.

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance |
| 18 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

### See attached Affidavit of Special Agent Myrella Betters.

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan Goldstein

RYAN GOLDSTEIN
Digitally signed by RYAN GOLDSTEIN
Date: 2021.12.03 15:30:06 -07'00'

Sworn to telephonically and signed electronically.

Date: 12/6/2021

City and state: Yuma, Arizona



*Myrella Betters*
Applicant's Signature

Myrella Betters, Drug Enforcement Administration
Printed name and title

Judge's signature

Honorable James F. Metcalf, U.S. Magistrate Judge
Printed name and title

**ATTACHMENT A**

*Property to be searched*

The property to be searched is a black Apple iPhone 12 Pro Max cellular telephone, serial number G0NP44N6ƉD42; a black Apple iPhone cellular telephone 12, serial number DNPDTKJT0DXW, and a Cricket cellular telephone EC1002, serial number 358621720926394. Both Apple iPhone's are subscribed to VEGA at 1630 West County 17 1/2 Street, Somerton, Arizona. The Cricket cellphone is subscribed to Blas Espinoza at 600 West Northern Avenue, Pueblo, Colorado. The cellular telephones are currently located at the YRO office located at 7010 East 29th Street, Suite 104, Yuma, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

*Property to be seized*

1.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES that relate to violations of 21 U.S.C. §§ 841, and 846, including:

      a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

      b.   all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

      c.   all bank records, checks, credit card bills, account information, or other financial records;

      d.   all information regarding the receipt, transfer, possession, transportation, or use of drug or;

      e.   any information recording schedule or travel;

      f.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

      g.   contextual information necessary to understand the evidence described in this attachment.

2.      Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books,

contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Myrella Betters, being first duly sworn, hereby deposes and states as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.    Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephones further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONES"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2.    Your Affiant is a Special Agent with the United States Department of Justice – Drug Enforcement Administration (DEA) an investigator/law enforcement officer of the United States within the meaning of Title 18, United States Code Section 2510(7) – an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code Section 2516. Your Affiant has been employed with DEA since December of 2018. Your Affiant is currently assigned to DEA's Yuma Resident Office (YRO), a component of DEA's Phoenix Field Division. Specifically, Your Affiant is assigned to Enforcement Group 56 (EG56) of the YRO and has been assigned to the group since July of 2019.

3.    In preparation to become a DEA Special Agent, Your Affiant completed a 16-week required training in Quantico, Virginia, upon beginning employment. During the 16-week training, Your Affiant received instruction on federal laws relating to drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, electronic surveillance, and case preparation. Your Affiant also received training that focused on the transportation and distribution of controlled substances,

including the identification of packaging and distribution techniques used by persons involved in the transportation and distribution of controlled substances.

4.     As a member of YRO EG56, Your Affiant is responsible for investigating crimes that involve the unlawful importation of controlled substances, including methamphetamine, cocaine, heroin, marijuana and the unlawful exportation of proceeds derived from the sale of controlled substances. YRO EG56 conducts violations of Title 21 investigations and specializes in the detection, penetration, and dismantlement of Mexican Drug Trafficking Organizations (DTOs), often in coordination with the Federal Bureau of Investigation (FBI), United States Immigration and Customs Enforcement (ICE)/Homeland Security Investigations (HSI), United States Border Patrol (USBP), Customs and Border Protection (CBP), and state/local law enforcement personnel designated as Task Force Officers (TFOs). These investigations have culminated into the issuance of search warrants, arrests, and convictions.

5.     By virtue of my employment as a Special Agent, Your Affiant has performed various tasks, which include, but are not limited to:

   a. Functioning as a surveillance agent, thus observing and recording movements of persons trafficking in drugs and those suspected of trafficking in drugs;

   b. Interviewing confidential sources (CS) relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (laundering of monetary instruments);

   c. Functioning as a case agent, entailing the supervision of specific investigation involving the trafficking of drugs and the laundering of monetary instruments.

6.     In the course of conducting drug investigations, Your Affiant has consulted with other experienced investigators concerning the practices of drug traffickers and the

2

best methods of investigating them.  In preparing this affidavit, Your Affiant has conferred with other Special Agents and other law enforcement officers, who share the opinions and conclusions stated herein.  Furthermore, Your Affiant has personal knowledge of the following facts or has learned them from the individual(s) mentioned herein.

7.      The statements contained in this Affidavit are based on information derived from Your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; and surveillance conducted by law enforcement officers.

8.      Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, Your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.    BACKGROUND INVESTIGATION

9.      In April 2021, investigators identified VEGA as a suspected drug load coordinator for a drug distribution cell ("VEGA Cell").  Specifically, VEGA coordinates the retrieval of drugs from couriers who cross the drugs from Mexico into the United States. Further, investigators believe VEGA compiles drugs from the couriers and then coordinates the distribution of the drugs throughout the United States.

## III.   BASIS FOR PROBABLE CAUSE

10.     On October 29, 2021, the Ajo Border Patrol Tactical Operation Center ("TOC") received information form the Yuma Border Intelligence Center ("BIC") regarding a white Nissan Altima registered to Yessica ACOSTA ("ACOSTA"), bearing Arizona license plate LS126 ("white Altima"), possibly involved in human and/or narcotics smuggling. At approximately 11:42 p.m., United States Border Patrol ("USBP") agents, in their unmarked vehicles, observed the white Altima exit Interstate 8 at a high rate of speed and travel into Gila Bend, Arizona.  The white Altima quickly braked as it passed USBP

3

agents.  USBP agents then followed the white Altima.  The white Altima then traveled toward Pima Street and then made an erratic lane change and sudden right turn into Burger King located at 501 West Pima Street, Gila Bend, Arizona.  Due to this driving behavior, the USBP agents following the white Altima were unable to make the turn into the Burger King parking lot.  However, other USBP agents pulled into the Burger King parking lot and saw the white Altima travel through the Burger King's drive through lane without stopping and then drive back out onto Pima Street. The white Altima then made a sudden left turn into the Shell gas station located at 942 East Pima Street, Gila Bend, Arizona. USBP agents then observed the white Altima park in the gas station and observed a female quickly exit the front passenger door of the vehicle and walk into the convenience store. Due to the aforementioned driving behavior, USBP agents decided to contact the occupants of the white Altima while it was parked at the gas station.

11.     Four USBP agents, who were wearing their issued tactical vests with "Police" placards on them, identified themselves as USBP agents and conducted an interview to determine the citizenship of the driver of the white Altima, VEGA. While USBP agents questioned VEGA about his travel, he appeared to be nervous because VEGA could not stand still, he continuously shifted his body weight, crossed his arms, and was moving around.   USBP agents asked VEGA if there was anything illegal in the white Altima, to which he hesitated but ultimately said there was not.  USBP agents asked VEGA if he was responsible for everything inside the vehicle and VEGA stated he was.  USBP agents then asked VEGA for consent to conduct a canine sniff of the interior and exterior of the white Nissan and VEGA granted consent to only the exterior of the vehicle.

12.     While the USBP agent's drug detection canine conducted a sniff, the female passenger, identified as ACOSTA, exited the convenience store. USBP agents asked ACOSTA about the purpose of her travel. At that time, the canine alerted to the trunk of

4

the white Nissan. USBP agents then asked ACOSTA what was in the vehicle and ACOSTA stated drugs. ACOSTA informed agents they were in trash bags throughout the vehicle.

13.     USBP agents then searched the vehicle and discovered approximately 67 packages consistent with the packaging of narcotics, which were concealed in several white trash bags located in the back seat and trunk of the white Altima. The packages contained 4.55 kilograms of suspected counterfeit M30 pills, which will be lab tested at a later date, 9.3 kilograms of crystalized substance, which field-tested positive for methamphetamine, 2.05 kilograms of a substance, which field-tested positive for heroin, and 46.4 kilograms of a substance, which field-tested positive for cocaine.

14.     USBP agents seized three phones from the white Nissan.  One phone is a black iPhone 12 Pro Max, the second is a black iPhone 12, and the other is a Cricket EC1002 cellphone (SUBJECT CELLULAR TELEPHONES).   All three phones were found in the center console of the white Altima. USBP agents asked VEGA and ACOSTA who the cellphones belonged to and VEGA claimed the black iPhone 12 Pro Max (serial number G0NF44N60D42) and the Cricket EC1002 cellphone were his.  ACOSTA said the black iPhone 12 (serial number DNPDTKJT0DXW) was hers. The SUBJECT CELLULAR TELEPHONES were subsequently transferred to the Maricopa County Drug Suppression Task Force ("MCDST").

15.     During a post-*Miranda* interview with ACOSTA, MCDST investigators asked ACOSTA what happened and ACOSTA said she is "Efren's (VEGA) girlfriend," and VEGA invited her to go to Phoenix with him. ACOSTA said she "volunteered to go with him." Regarding the drugs in the white Altima, ACOSTA said, "I just saw the bags, all trash but, I mean they're see through, but I did ask him where, you know, who they're going to or what's inside the bags, and he just didn't want to answer what is was or who it was going to." MCDST investigators asked if they stopped somewhere to pick up the drugs and ACOSTA said, "I guess they were in the car 'cause we just took off… because there

was no stop leaving Yuma." MCDST investigators asked ACOSTA where the bags were and she said, "I saw some behind me 'cause I changed clothes and my luggage was in the back and I just saw the bags." MCDST investigators asked ACOSTA if she said anything when she saw the bags and she said, "I asked him (VEGA) and he said 'don't ask.'" MCDST investigators asked if ACOSTA had reason to believe VEGA was involved in drug smuggling and ACOSTA said, "No." ACOSTA indicated that she did not try to exit the white Altima after she noticed the bags in the back seat area. MCDST investigators asked ACOSTA if VEGA forced her to be with him and ACOSTA said, "No." MCDST investigators asked ACOSTA where in Phoenix she and VEGA were going and she replied, "…I heard on the phone but he doesn't tell me, it's just by code…who is meeting with who and where." MCDST investigators asked how VEGA did that and ACOSTA said, "…on the other phone, in the black one, they tell him what to say…they make up names for each other." Agents asked about the amount of times VEGA runs drug loads and ACOSTA said about two to three loads a week. ACOSTA also provided the passcode to her black iPhone 12 and consented to a search of her cellphone.

16.    VEGA invoked his right to an attorney and the interview was terminated. After invoking his right to have an attorney present, an investigator with the MCDST had an additional conversation with VEGA, wherein the investigator obtained VEGA's passcode for the black iPhone Pro Max. Your Affiant has not included any other information in this affidavit from the conversation the MCDST investigator had with VEGA after he invoked his right to an attorney.

17.    VEGA and ACOSTA were released pending further investigation.

18.    Pursuant to *Maryland v. Shatzer*, 559 U.S. 98, 109-10 (2010) (the rule that a suspect who has invoked his right to counsel during a custodial interrogation is not subject to further interrogation until counsel has been made available or the suspect reinitiates contact with law enforcement, does not apply if there is a break in custody lasting 14 or

more days), law enforcement reinitiated contact with VEGA on November 29, 2021. Later that day, VEGA agreed to come to the DEA YRO office to speak with agents. When he arrived, DEA YRO agents provided *Miranda* warnings to VEGA. VEGA confirmed he did not have an attorney and wanted to speak with agents. VEGA then provided the passcode for his black iPhone 12 Pro Max and consented to the search of this cellphone.

19.     On that same date (November 29, 2021), MCDST investigators transferred custody of the SUBJECT CELLULAR TELEPHONES to Your Affiant at the YRO.

20.     Based on Your Affiant's training and experience, and understanding of this investigation, Your Affiant believes that individuals who obtain and transport illicit drugs, like those suspected drugs mentioned above, will often use cellular telephones, like the SUBJECT CELLULAR TELEPHONES, to contact sources of supplies, other couriers, or stash house operators, and that their telephones will often contain evidence of such illicit contact set forth in Attachment B. Thus, Your Affiant believes there is probable cause the SUBJECT CELLULAR TELEPHONES will contain evidence of drug trafficking.

21.     On November 2, 2021, Maricopa County Superior Court Commissioner Gregory J. Gnepper, authorized the search of the SUBJECT CELLULAR TELEPHONES. While the DEA might already have all necessary authority to examine the SUBJECT CELLULAR TELEPHONES, Your Affiant seeks this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws. SUBJECT CELLULAR TELEPHONES are currently in storage at the YRO office located at 7101 East 29th Street, Suite 104, Yuma, Arizona.

**IV.     <u>ITEMS TO BE SEIZED</u>**

22.     Based upon the facts contained in this Affidavit, Your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONES.

23. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, Your Affiant knows the following:

a. Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking and money laundering activities. Therefore, evidence related to drug trafficking activity and money laundering activity is likely to be found on the SUBJECT CELLULAR TELEPHONES.

24. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, Your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONES.

## V. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

25. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONES. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

26. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal

8

offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, Your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

   b. Based on my knowledge, training, and experience, Your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

   c. Based on my knowledge, training, and experience, Your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

   d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In

addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

27.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner.  Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used.  For example, as described herein, cellular telephones can contain information that log: session

10

times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

         c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

         d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other

11

storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant Your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///

///

///

12

## VI.    CONCLUSION

30.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute a Controlled Substance), and 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONES further described in Attachment A.

*Myrella Betters*
Special Agent Myrella Betters
Drug Enforcement Administration

Subscribed to electronically and sworn to telephonically this __6th__ day of December, 2021.

HONORABLE JAMES F. METCALF
United States Magistrate Judge

13